IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 19 2008

COURT OF APPEALS
DIVISION TWO



| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2007-0126 |
| Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ROBERTO ROSADILLO AGUILAR, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20063709

Honorable Stephen C. Villarreal, Judge

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                                   Tucson
                                                    Attorneys for Appellant

Robert J. Hooker, Pima County Public Defender
  By Frank P. Leto                                                    Tucson
                                                    Attorneys for Appellee

P E L A N D E R, Chief Judge.

¶1          In several recent cases, this court has addressed the meaning and effect of

A.R.S. § 13-107, the statute of limitations that applies to criminal actions. *See State v.*

*Gum*, 214 Ariz. 397, 153 P.3d 418 (App. 2007); *Taylor v. Cruikshank*, 214 Ariz. 40, 148 P.3d 84 (App. 2006); *State v. Jackson*, 208 Ariz. 56, 90 P.3d 793 (App. 2004). In this appeal by the state, we must once again determine whether a criminal prosecution is time-barred under § 13-107. The trial court ruled it was and, therefore, dismissed all charges against defendant/appellee Roberto Aguilar.

¶2 The primary issue raised is whether a reasonable-diligence standard for discovering that a criminal offense has been committed, as adopted in *Jackson*, 208 Ariz. 56, ¶¶ 30, 37, 41, 90 P.3d at 802, 803, 804, also applies under § 13-107(E) to the state's identification of the suspect to be charged with the crime, as the trial court ruled. For the reasons stated below, we conclude the court erred in applying *Jackson*'s reasonable-diligence standard to subsection (E), which the legislature added in 1997. *See* 1997 Ariz. Sess. Laws, ch. 135, § 1. And, contrary to Aguilar's position, we find no reason to reject or deviate from *Gum*. Accordingly, although we affirm the trial court's dismissal of the sexual abuse and burglary charges against Aguilar because § 13-107(E) does not apply to them, we reverse the dismissal of the sexual assault and kidnapping charges against him and remand the case for further proceedings consistent with this opinion.

**Background**

¶3 The pertinent facts and procedural background are undisputed. Two different victims were sexually assaulted in their homes on September 9 and October 12, 1993. Police officers collected bedding, clothing, and physical evidence from both victims and crime scenes and also obtained deoxyribonucleic acid (DNA) evidence. At the time, police could not match the DNA samples to any particular person.

2

**¶4** In November 2000, the Tucson Police Department (TPD) joined the Combined DNA Index System (CODIS), a comprehensive database of DNA samples supplied by local, state, and national agencies. On November 27, 2002, in an unrelated case, police officers collected a sample of Aguilar's DNA. In November 2003, officers asked the TPD crime laboratory to analyze for a possible match the DNA samples from the earlier, unsolved sexual assault cases. In March and April 2006, a senior TPD criminalist matched Aguilar's DNA with the samples taken from the two 1993 crime scenes. At an evidentiary hearing held below, the criminalist explained that the delay between 2003 and 2006 had occurred because the crime laboratory had been "swamped" with handling current cases, processing samples, and responding to various requests in other cases.

**¶5** In October 2006, a grand jury indicted Aguilar on four counts of sexual assault, three counts of sexual abuse, two counts of kidnapping, and two counts of second-degree burglary arising from the 1993 crimes. Aguilar moved to dismiss the charges, contending the prosecution was time-barred under the seven-year statute of limitations prescribed in § 13-107(B)(1). In response, the state argued the limitations period had not expired because law enforcement had diligently pursued an indictment and because the statute did not begin to run until the spring of 2006, when the state actually discovered Aguilar's identity. After an evidentiary hearing at which the TPD criminalist testified, the trial court dismissed all charges, finding them time-barred. We have jurisdiction of the state's appeal pursuant to A.R.S. § 13-4032(1).

**Legal Framework**

¶6        The current version of § 13-107(B) is unchanged from 1993, when the crimes were committed.  *See* 1985 Ariz. Sess. Laws, ch. 223, § 1; *see also Taylor*, 214 Ariz. 40, ¶ 19, 148 P.3d at 89.  It provides:

> Except as otherwise provided in this section, prosecutions for other offenses [not included in § 13-107(A)] must be commenced within the following periods after actual discovery by the state or the political subdivision having jurisdiction of the offense or discovery by the state or the political subdivision that should have occurred with the exercise of reasonable diligence, whichever first occurs.

Because all of the charges against Aguilar fall within § 13-107(B)(1), a seven-year limitations period applies to each.

¶7        In 1997, the legislature amended § 13-107 by adding subsection (E), which provides: "The period of limitation does not run for a serious offense as defined in [A.R.S.] § 13-604 during any time when the identity of the person who commits the offense or offenses is unknown."  1997 Ariz. Sess. Laws, ch. 135, § 1.  That provision took effect on July 21, 1997, and applies to charges of sexual assault and kidnapping, both of which are statutorily defined as serious offenses.  § 13-604(W)(4)(e) and (j).

¶8        Seven years after the statute was amended, this court decided *Jackson*, in which the alleged victim had for several years denied that any offense had been committed against her.  There, we concluded "the seven-year limitation period under [§ 13-107(B)] begins 'when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal [offense] has been committed.'"  208 Ariz. 56, ¶ 30, 90 P.3d at 802, *quoting State v. Wilson*, 573 N.W.2d 248, 254 (Iowa 1998)

4

(second alteration in *Jackson*). We further stated "[p]robable cause exists 'when reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense.'" *Id.* ¶ 31, *quoting State v. Hoskins*, 199 Ariz. 127, ¶ 30, 14 P.3d 997, 1007-08 (2000).

¶9  In *Jackson*, assuming any offense had been committed, the identity of the suspect was known. *Id.* n.3 & n.14. Therefore, we did not address the question whether it is the government's discovery of only an offense or of both the offense and the offender that triggers the running of the limitations period. *Id*. n.14. Nor did we address the effect, if any, of § 13-107(E), because the state conceded that the 1997 statutory amendment did not affect the case. *Jackson*, 208 Ariz. 56, n.3, 90 P.3d at 796 n.3.

¶10  Two years after *Jackson*, this court decided *Taylor*. There, unlike in *Jackson*, the state knew immediately that offenses had been committed. *Taylor*, 214 Ariz. 40, ¶¶ 3, 5, 148 P.3d at 85, 86. The issue presented in *Taylor*, and not addressed in *Jackson*, was "whether the statute requires discovery of an offense or discovery of the offender." *Id*. ¶ 13. Based on "the language, historical context, and purposes" of § 13-107(B), we concluded that "the limitation period run[s] from the time the state either discovered or, with the exercise of reasonable diligence should have discovered, that an offense had been committed." *Taylor*, 214 Ariz. 40, ¶ 27, 148 P.3d at 91. Because the state knew the crimes in *Taylor* had been committed in 1994, the indictments filed in 2006, after completion of DNA analyses, were untimely. *Id*. ¶¶ 3, 5-6, 29.

¶11  Significantly, in *Taylor*, as in *Jackson*, the state did not argue § 13-107(E) applied to toll the statute of limitations. Rather, the parties agreed that the case was

5

governed by the version of § 13-107 in effect in 1994, when the offenses were committed. *Taylor*, 214 Ariz. 40, ¶ 8, 148 P.3d at 86.

¶12 More recently, in *Gum*, two victims were sexually assaulted in 1991, but the assailant's identity was not discovered until 2002. 214 Ariz. 397, ¶¶ 2-3, 153 P.3d at 420. Shortly thereafter the defendant was indicted. *Id.* ¶ 4. Upholding the trial court's refusal to dismiss the charges as time-barred, Division One of this court concluded that § 13-107(E) "applies to cases in which the existing limitations period had not yet expired on the amendment's effective date" and "extends the limitations period in such cases." *Id.* ¶ 13. The court stated: "Whether characterized as a tolling provision or an extension of the limitations period, A.R.S. § 13-107(E) serves to extend the limitations period for all offenses included in subsection (E) for which the limitations period was unexpired on July 21, 1997." *Gum*, 214 Ariz. 397, ¶ 29, 153 P.3d at 426. Because the seven-year limitations period for Gum's offenses had not expired by that date and because the sexual assault charges were serious offenses within subsection (E), the court ruled "the limitations period was extended and Gum's prosecution was not time-barred." *Id.*

**Discussion**

¶13 The state argues the trial court erroneously dismissed the sexual assault and kidnapping charges against Aguilar because the legislature's addition of § 13-107(E) in 1997 tolled or extended the limitations period for those serious offenses until the state discovered Aguilar's identity in 2006 through DNA testing. The state also argues that, contrary to our holding in *Taylor*, the limitations period did not commence until "discovery of [both] the crimes and Defendant's identity" and, therefore, none of the charges should have been

6

dismissed on limitations grounds. We address those contentions in reverse order, guided by the following principles.

**¶14** "We review an order granting a motion to dismiss criminal charges for an abuse of discretion or for the application of an incorrect legal interpretation." *State v. Lemming*, 188 Ariz. 459, 460, 937 P.2d 381, 382 (App. 1997); *see also Taylor*, 214 Ariz. 40, ¶ 10, 148 P.3d at 87. We construe criminal statutes of limitations "liberally in favor of the accused and against the prosecution." *State v. Fogel*, 16 Ariz. App. 246, 248, 492 P.2d 742, 744 (1972); *see also Taylor*, 214 Ariz. 40, ¶ 9, 148 P.3d at 86. When a defendant "presents some reasonable evidence to support [a statute of limitations defense], the state bears the burden of establishing by a preponderance of the evidence that the prosecution is not time barred." *Jackson*, 208 Ariz. 56, ¶ 26, 90 P.3d at 800.

**¶15** "Interpretation of statutes is subject to our de novo review." *Id.* ¶ 13. More specifically, "[w]hether a particular statute of limitations applies is a question of law, which we review *de novo*." *Harris Trust Bank v. Superior Court*, 188 Ariz. 159, 162-63, 933 P.2d 1227, 1230-31 (App. 1996); *see also Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (App. 1996) (we "independently review any questions of law relating to the statute of limitations defense").

**¶16** In interpreting statutes, "our primary goal is to discern and give effect to the legislature's intent." *State v. Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d 218, 220 (App. 2002). Under "'fundamental principles of statutory construction, . . . the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *State v. Aguilar*, 209 Ariz. 40, ¶ 26, 97

7

P.3d 865, 873 (2004), *quoting Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); *see also State v. Sepahi*, 206 Ariz. 321, ¶ 16, 78 P.3d 732, 735 (2003); *State v. Mangum*, 214 Ariz. 165, ¶ 12, 150 P.3d 252, 256 (App. 2007). But, if "the statute's language is not clear, we determine legislative intent by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

## A. Commencement of statute of limitations

¶17 Relying on *Taylor*, the trial court ruled that the seven-year limitations period began to run on the 1993 offenses on the dates they were committed. Claiming "*Taylor* was wrongly decided," the state challenges that ruling and argues the statute did not begin to run until the state had discovered not only the crimes but also the assailant's identity. Contending it "did not and could not have probable cause to identify [Aguilar] as a suspect until the DNA match was made in March 2006," the state argues the indictment was timely and none of the charges is time-barred.

¶18 In support of its argument, the state points out that § 13-107(B) requires timely "prosecutions." Citing *Jackson*, 208 Ariz. 56, ¶¶ 30-31, 90 P.3d at 801-02, it maintains that "[a] prosecution requires probable cause 1) that a crime has been committed and 2) that a certain person committed that crime." The state also notes that, under § 13-107(C), "a prosecution is commenced when an indictment, information or complaint is filed," none of which can occur until a defendant has been identified. Further, according to the state, the

8

tolling provision in § 13-107(D) "would be meaningless" absent prior knowledge of the defendant's identity.[1]

¶19        In *Taylor*, this court already considered and rejected virtually identical arguments. Finding the language of § 13-107(B) unclear, we examined the history and purpose of the statute, *Taylor*, 214 Ariz. 40, ¶¶ 13-23, 148 P.3d at 87-90, concluding that, "under the version of § 13-107 applicable [there], the limitation period begins to run from the date the authorities knew or should have known the offense was committed." 214 Ariz. 40, ¶ 19, 148 P.3d at 89. We find no reason to depart from that holding now.[2]

¶20        Therefore, the trial court correctly determined here that the statute of limitations began to run on September 9 and October 12, 1993, when the state discovered the crimes. Any tolling or extension of the limitations period pursuant to § 13-107(E) applies only to crimes listed as serious offenses in § 13-604. Sexual assault and kidnapping are listed, but sexual abuse and second-degree burglary are not. *See* § 13-604(W)(4)(e) and (j) (formerly A.R.S. § 13-604(U)(2)(e) and (j) (1997)). Accordingly, the sexual abuse and second-degree burglary charges against Aguilar are subject to the seven-year statute of limitations in § 13-107(B)(1), which expired on September 9 and October 12, 2000, long

---

[1]Section 13-107(D) states: "The period of limitation does not run during any time when the accused is absent from the state or has no reasonably ascertainable place of abode within the state."

[2]In *Gum*, 214 Ariz. 397, ¶ 11 & n.3, 153 P.3d at 421 & n.3, the court "agree[d] with *Taylor*'s holding" and, "[f]or the reasons set forth in *Taylor*," disagreed with the trial court's finding in *Gum* "that the limitations period did not commence until authorities discovered the identity of the offender."

before he was indicted. We affirm the court's dismissal of those particular counts as time-barred.

**B. Tolling of limitations period**

**¶21** Stating it was "attempt[ing] to reconcile" *Taylor* with *Gum*, the trial court ruled that the running of the statute of limitations was tolled by the enactment of § 13-107(E) in 1997, but only "until the time that the State should reasonably be able to identify the offender," that is, until the state had probable cause to charge Aguilar. Relying on *Gum*, the state argues it may prosecute Aguilar on the sexual assault and kidnapping charges because § 13-107(E) applies to those charges and tolled or extended the limitations period until Aguilar was identified as the offender. Aguilar, however, responds that applying § 13-107(E) to him would "violat[e] Arizona case law, A.R.S. § 1-244 and § 1-249, and the Ex Post Facto Clause of the Arizona and U[nited] S[tates] Constitutions." *See* U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1; Ariz. Const. art. II, § 25.

**¶22** Although the trial court did not expressly address Aguilar's various statutory and constitutional arguments in dismissing the charges against him, we can uphold the court's ruling if it was legally correct on any ground, even if the court's reasoning was not. *See State v. Cañez*, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) ("we are obliged to uphold the trial court's ruling if legally correct for any reason"); *State v. King*, 213 Ariz. 632, ¶ 8, 146 P.3d 1274, 1277 (App. 2006). Because we agree with the state and the trial court that, under *Gum*, § 13-107(E) at least applies to toll the limitations period as of the subsection's effective date, we address Aguilar's contention that *Gum* was "wrongly decided and [is] inapplicable to [this] case." We address his statutory arguments first because, if

10

correct, "[they] would obviate the need to reach the constitutional issues he raises." *Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, n.2, 132 P.3d 290, 293 n.2 (App. 2006).

### 1. Statutory claims

¶23    Aguilar contends the court in *Gum* deviated from the reasoning and result in *Garcia v. Browning*, 214 Ariz. 250, 151 P.3d 533 (2007), and "ignored the clear and unambiguous text of A.R.S. § 1-244," which provides that "[n]o statute is retroactive unless expressly declared therein." We disagree. Though not "'absolutely bound'" by *Gum*, we adopt its reasoning and result here because we cannot say the decision rests "'upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.'" *Danielson v. Evans*, 201 Ariz. 401, ¶ 28, 36 P.3d 749, 757 (App. 2001), *quoting Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974). In fact, we find the result in *Gum* not only compatible with *Garcia* but also wholly consistent with retroactivity principles recognized in Arizona and elsewhere.

¶24    As Aguilar correctly notes, when adding subsection (E) to § 13-107, the legislature did not expressly state "that the amendment was to have a retroactive application." Absent any such express declaration, Aguilar argues, applying the amendment retroactively to him would violate the clear prohibition in § 1-244. *See Garcia*, 214 Ariz. 250, ¶ 19, 151 P.3d at 537 ("§ 1-244 plainly requires an express declaration from the legislature before a law can apply retroactively"); *see also State v. Coconino County Superior Court (Mauro)*, 139 Ariz. 422, 427, 678 P.2d 1386, 1391 (1984) (statutory

11

changes to Arizona's insanity defense, A.R.S. § 13-502, did not apply to defendant when no clear expression of "legislative intent to make the new provisions retroactive").

¶25      Assuming that is so, "[a]lthough the mandate of A.R.S. § 1-244 is clear, that does not end our analysis." *Garcia*, 214 Ariz. 250, ¶ 12, 151 P.3d at 536. Rather, we must determine whether the state's reliance on § 13-107(E) to extend the allowable time for charging Aguilar necessarily results in retroactive application of the new statute to him. *See id.* As the court stated in *Garcia*, "[a] statute is not necessarily '"retroactive in application simply because it may relate to antecedent facts."'" 214 Ariz. 250, ¶ 12, 151 P.3d at 536, *quoting Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 24, 11 P.3d 1006, 1011 (2000), *quoting Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250, 508 P.2d 324, 326 (1973); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). Rather, "legislation may not disturb vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, ¶ 15, 972 P.2d 179, 189 (1999). And, "[a] statute is not impermissibly retroactive if it is merely procedural and does not affect an earlier established substantive right." *Gum*, 214 Ariz. 397, ¶ 23, 153 P.3d at 424, *citing In re Shane B.*, 198 Ariz. 85, ¶ 8, 7 P.3d 94, 96 (2000); *see also State v. Warner*, 168 Ariz. 261, 264, 812 P.2d 1079, 1082 (App. 1990) (although legislation generally will only apply prospectively, "the rule is otherwise where the legislation is merely procedural in nature and does not affect substantive rights").

¶26      Aguilar essentially claims to have a vested, substantive right to assert a limitations defense to all charges based on the pre-1997 version of § 13-107 in effect at the time the offenses were committed, unaffected by the 1997 amendment in § 13-107(E). But

12

a criminal statute is generally deemed substantive if it "'defines a crime or involves the length or type of punishment.'" *In re Shane B.*, 198 Ariz. 85, ¶ 9, 7 P.3d at 97, *quoting Lamb v. Kansas Parole Bd.*, 812 P.2d 761, 764 (Kan. Ct. App. 1991); *see also Gum*, 214 Ariz. 397, ¶ 24, 153 P.3d at 425. Section 13-107(E) does not fall within that category in that it does not alter the elements of an offense, redefine a crime or substantive defense in some other manner, reallocate burdens of proof, or otherwise affect a substantive right such as the length or type of punishment that might be imposed for prior conduct. And, as in *Gum*, Aguilar's "limitations defense had not vested at the time the 1997 amendment became effective." 214 Ariz. 397, ¶ 28, 153 P.3d at 425. In short, at that point in time, Aguilar had no vested, substantive right to any fixed or unchangeable statute of limitations because "the seven-year period had not expired" and, therefore, he "could not have asserted a valid limitations defense." *Id*.

¶27        We also agree with the suggestion in *Gum* that § 13-107(E) constitutes a procedural change in the law and, as such, does not raise retroactivity concerns. *See* 214 Ariz. 397, ¶¶ 23-24, 153 P.3d at 424-25. The United States Supreme Court has observed that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275. "Because rules of procedure regulate secondary rather than primary conduct," the Court stated, "the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id*. But even if it did, our supreme court has stated that "'[e]nactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively.'" *City of Tucson*

13

*v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 11, 105 P.3d 1163, 1166 (2005), *quoting Aranda*, 198 Ariz. 467, ¶ 11, 11 P.3d at 1009; *see also In re Shane B.*, 198 Ariz. 85, ¶ 8, 7 P.3d at 96. Moreover, "Arizona courts have traditionally viewed statutes of limitations as procedural for retroactivity purposes." *Clear Channel Outdoor*, 209 Ariz. 544, ¶ 11, 105 P.3d at 1167. Therefore, even if application of § 13-107(E) to Aguilar results in the statute being given retroactive effect, Arizona law would not necessarily prohibit it.

¶28 Aguilar correctly points out that Arizona courts have characterized the criminal statute of limitations in § 13-107 as jurisdictional. *See Taylor*, 214 Ariz. 40, ¶ 9, 148 P.3d at 86; *Jackson*, 208 Ariz. 56, ¶ 18, 90 P.3d at 798. That a statute relates to a court's jurisdiction, however, does not necessarily mean the statute is substantive rather than procedural in nature. *See* ¶ 26, *supra, see also Landgraf*, 511 U.S. at 274 (Court noted it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed," "because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'"), *quoting Republic Nat'l Bank v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring); *Tex. Tech Univ. Health Sciences Ctr. v. Lucero*, 234 S.W.3d 158, 166 (Tex. App. 2007) ("A statute conferring or ousting jurisdiction applies to existing suits because such laws generally do not affect substantive rights."); *Tex. Dep't of Criminal Justice v. Simons*, 197 S.W.3d 904, 907 (Tex. App. 2006) ("jurisdictional statutes are procedural"). And even if a new procedural statute affects a court's jurisdiction, but not "an earlier established substantive right," *Gum*, 214 Ariz. 397, ¶ 23, 153 P.3d at 424, it may be

14

applied to legal proceedings in which pre-statute conduct is at issue without implicating or violating retroactivity principles. *See Landgraf*, 511 U.S. at 275.

¶29 Analysis of the concept relating to "completed events," *San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189, also supports our conclusion that application of § 13-107(E) to Aguilar does not produce an illegal retroactive effect. In analyzing whether the statute at issue in *Garcia* was impermissibly applied retroactively, in violation of § 1-244, our supreme court implicitly differentiated primary from secondary conduct. The court said if a new law "regulates primary conduct, then it cannot be applied to antecedent acts" absent an express legislative declaration. *Garcia*, 214 Ariz. 250, ¶ 12, 151 P.3d at 536. And, the court further stated, "Arizona cases have consistently held that the date of the offense is the operative event for retroactivity analysis when a new statute regulates primary conduct." *Id.* ¶ 14.

¶30 The two Arizona cases the *Garcia* court cited for that proposition, however, did not expressly use or define the phrase "primary conduct." *See In re Shane B.*, 198 Ariz. 85, ¶ 7, 7 P.3d at 96; *Mauro*, 139 Ariz. at 427, 678 P.2d at 1391. The *Garcia* court also cited Justice Scalia's concurring opinion in *Landgraf*, 511 U.S. at 291, in which he stated, "[m]ost statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date." In that same passage, however, Justice Scalia also stated "other statutes have a different purpose and therefore a different relevant retroactivity event," noting that "[t]he critical issue . . . is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates." *Id.* at 291 (Scalia, J., concurring in the judgments). And,

15

as noted above, the majority opinion in *Landgraf* recognized that procedural laws, such as statutes of limitations, "regulate secondary rather than primary conduct" and, therefore, do not pose retroactivity concerns. 511 U.S. at 275.

¶31 Unlike this case and *Gum*, *Garcia* did not involve an amended statute of limitations.[3] But other jurisdictions that have addressed retroactivity questions in the context of newly enacted statutes of limitations have noted, "[i]n applying legislatively amended periods of limitation, courts typically construe them as 'govern[ing] the secondary conduct of filing suit, not the primary conduct of the [parties].'" *Cook v. Stegall*, 295 F.3d 517, 520 (6th Cir. 2002), *quoting St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43, 46 (5th Cir. 1995) (alterations in *Cook*); *see also Brown v. Angelone*, 150 F.3d 370, 373 (4th Cir. 1998); *W.R. Huff Asset Mgmt. Co. v. Kohlberg Kravis Roberts & Co.*, 234 F. Supp. 2d 1218, 1226 (N.D. Ala. 2002); *Grygorwicz v. Trujillo*, 140 P.3d 550, 555 (N.M. Ct. App. 2006). Consistent with these authorities, we conclude the "primary conduct" here consisted solely of the criminal offenses with which Aguilar is charged. But the legislature's 1997 amendment in § 13-107(E) merely "govern[s] the secondary conduct" of the state's filing of those charges, "not the primary conduct" of the unlawful acts underlying this prosecution.

---

[3]The statutory amendments addressed in *Garcia* related to justification defenses and "not only shift[ed] the burden of proof from the defendant to the state, . . . but also declar[ed] that conduct that is justified 'does not constitute criminal or wrongful conduct.'" *Garcia v. Browning*, 214 Ariz. 250, ¶ 14, 151 P.3d 533, 536 (2007), *quoting* A.R.S. § 13-205(A). In contrast, as the court concluded in *Gum* and as we discuss below, § 13-107(E) does not "regulate[] primary conduct." *Id.; see also Gum*, 214 Ariz. 397, ¶ 27, 153 P.3d at 425.

*Cook*, 295 F.3d at 520, *quoting St. Louis*, 65 F.3d at 46; *see also Landgraf*, 511 U.S. at 275; *see also Gum*, 214 Ariz. 397, ¶ 27, 153 P.3d at 425.

¶32          We are not persuaded by Aguilar's related argument that application of § 13-107(E) to him is impermissibly retroactive because it "alters the legal consequences that attached to [his] conduct at the time it was committed." *Garcia*, 214 Ariz. 250, ¶ 14, 151 P.3d at 536. That standard for determining retroactivity inevitably requires a determination of the relevant "completed event[]," *San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189, or "primary conduct." *Garcia*, 214 Ariz. 250, ¶ 14, 151 P.3d at 536. The "completed event" for purposes of our retroactivity analysis is not, as Aguilar urges, the offenses committed in 1993; rather, as the court in *Gum* concluded, "the operative event for the purpose of precluding the use of § 13-107(E) to extend the limitations period was . . . the date when [Aguilar's] limitations defense would have vested," that is, seven years after the offense date. 214 Ariz. 397, ¶ 27, 153 P.3d at 425. And, as we concluded above, § 13-107(E) only regulates secondary conduct, not any primary conduct that resulted in this prosecution.

¶33          Moreover, as Justice Scalia noted in his concurring opinion in *Landgraf*, "the test [for retroactivity] as being 'whether the new provision attaches new legal consequences to events completed before its enactment'" was "borrowed directly from [the Court's] *Ex Post Facto* Clause jurisprudence." 511 U.S. at 290 (Scalia, J., concurring in the judgments). And, as discussed below, federal and state courts have uniformly rejected arguments, such as Aguilar's, that application of new statutes of limitations to past crimes violates ex post facto principles, provided the prosecution is not already time-barred when the new statute

17

becomes effective. *See* ¶ 42, *infra*. That is particularly important inasmuch as "[t]he *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf*, 511 U.S. at 266. Because the "alteration of legal consequence" test emanates directly from ex post facto jurisprudence, and because courts applying that test have consistently rejected ex post facto challenges to legislative extensions of unexpired statutes of limitations in criminal cases, we see no reason to apply the test differently under § 1-244. A fair reading of *Garcia* and the cases on which it relied does not support that type of variation and inconsistency.

¶34 Nor do the other cases cited in *Garcia* support a conclusion that application of § 13-107(E) to Aguilar would somehow violate § 1-244. For example, in *Zuther v. State*, 199 Ariz. 104, ¶ 21, 14 P.3d 295, 302 (2000), the court concluded that Arizona's new, inmate "gate money" statute could be applied to Zuther without violating retroactivity principles. The court ruled that the relevant "completed event" was not the crime he had committed, but rather, "the completion of all requirements necessary to make an inmate eligible for release from prison." *Id.* ¶ 15. That was so, the court noted, "because nothing is due any inmate until the date of release." *Id.* ¶ 16. Similarly, for statute of limitations purposes, "nothing is due" a defendant who seeks dismissal based on the prosecution being time-barred unless and until the limitations period has, in fact, expired. *Id.; see also Longhibler v. State*, 832 S.W.2d 908, 909 (Mo. 1992) (prosecution not time-barred when "limitations period was extended before it lapsed"); *Grygorwicz*, 140 P.3d at 555 (distinguishing cases "in which the cause of action was already barred by preexisting law before the amendment of the law enlarging the time in which the action may be

18

commenced"); *Rice v. Louis A. Williams & Assocs.*, 86 S.W.3d 329, 335-36 (Tex. App. 2002) (defendant has vested right to assert limitations defense based on prior statute if action already time-barred when new statute of limitations takes effect).

¶35 In our view, the court in *Gum* correctly adhered to these principles in concluding that no violation of § 1-244 resulted from applying § 13-107(E) to prosecutions for which the statute of limitations had not yet expired as of the amendment's effective date. As the court noted, application of subsection (E) to extend the limitations period under those circumstances neither "disturbs vested substantive rights by retroactively changing the law that applies to completed events" nor "regulates primary conduct." *Gum*, 214 Ariz. 397, ¶¶ 26, 27, 153 P.3d at 425. Likewise, we find no violation of § 1-244 in this case.

¶36 Still, citing *Garcia*, 214 Ariz. 250, ¶ 14, 151 P.3d at 536, Aguilar contends his "right to interpose the jurisdictional requirement of timely prosecution vested at the time the State discovered the offenses in question." He argues the court in *Gum* erroneously "reli[ed] on the civil law concept of vested rights" in concluding that "Gum's limitations defense had not vested at the time the 1997 amendment became effective." *Gum*, 214 Ariz. 397, ¶ 28, 153 P.3d at 425; *see also id.* ¶ 26, *citing San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189; *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 139-40, 717 P.2d 434, 443-44 (1986). But in *Garcia*, which arose from an underlying criminal case, our supreme court drew on civil case law in determining that "applying the amended statutes [t]here to conduct that occurred before [the effective date of those amendments], alters the legal consequences that attached to such conduct at the time it was committed, giving the statutes retroactive effect." 214 Ariz. 250, ¶ 14, 151 P.3d at 536, *citing Zuther*, 199 Ariz.

19

104, ¶ 15, 14 P.3d at 300; *San Carlos Apache Tribe*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189; *Tower Plaza Invs. Ltd.*, 109 Ariz. at 250, 508 P.2d at 326.

¶37 Moreover, even if civil law principles of vested rights do not squarely apply to Aguilar's argument under § 1-244, we find support in neither *Garcia* nor the other cases he cites for the assertion that his "rights under the pre-1997 statute of limitations fully vested when the police discovered his offense."[4] Rather, as noted earlier, we agree with the *Gum* court's observation that, "unlike the statute at issue in *Garcia*, amended § 13-107 does not regulate primary or any other conduct or attach new legal consequences" to the 1993 offenses for which Aguilar is charged. 214 Ariz. 397, ¶ 27, 153 P.3d at 425. In sum, applying § 13-107(E) to toll or extend the running of the limitations period, when that period had not yet expired as of the effective date of subsection (E), does not violate § 1-244.[5]

---

[4]*See Garcia*, 214 Ariz. 350, ¶ 14, 151 P.3d at 536; *State v. Moody*, 208 Ariz. 424, ¶ 191, 94 P.3d 1119, 1161 (2004) (change in law on temporary intoxication "was substantive because it deprived Moody of a defense" and, therefore, did not apply to his case); *State v. Correll*, 148 Ariz. 468, 481-82, 715 P.2d 721, 734-35 (1986) (retroactive application of new, statutory sentencing aggravator violated constitutional ex post facto prohibition); *State v. Coconino County Superior Court*, 139 Ariz. 422, 427, 678 P.2d 1386, 1391 (1984) (change in statute on insanity defense not retroactive).

[5]We acknowledge that, in *Taylor*, this court "agree[d]" with "[t]he parties['] agree[ment] that the applicable statute of limitation is the statute in effect when the offenses were committed." 214 Ariz. 40, ¶ 8, 148 P.3d at 86; *see also State v. Escobar-Mendez*, 195 Ariz. 194, n.6, 986 P.2d 227, 231 n.6 (App. 1999) (citing *Martin* and noting that § 13-107(E) "does not apply to the present case because statutes of limitations only apply to offenses committed after their adoption"). That statement in *Taylor*, however, was merely based on the parties' accord rather than on any extensive analysis. And, because the statement was unnecessary to this court's reasoning or result in *Taylor*, it was merely dictum. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (dictum is court's statement on question not necessarily involved in case, is

**¶38** *Martin v. Superior Court*, 135 Ariz. 99, 659 P.2d 652 (1983), does not alter our conclusion. At oral argument in this court, Aguilar contended *Martin* was "on all fours with this case and absolutely controls the outcome." We disagree. The court in *Martin* held that the then-new version of § 13-107, which extended the statute of limitations for felonies from five years to seven years, "applies only to those offenses allegedly committed on or after the new criminal code's effective date of October 1, 1978." *Id.* at 100, 659 P.2d at 653. That holding, however, was based solely on several clear legislative pronouncements in the session laws relating to enactment of the 1978 criminal code. *See id., quoting* 1977 Ariz. Sess. Laws, ch. 142, § 179(A), (C). According to the court, those express provisions made "clear that the legislature has directed that the new criminal code shall only operate prospectively." *Id.*

**¶39** As noted in *Gum*, 214 Ariz. 397, ¶ 20, 153 P.3d at 424, no such directive accompanied the legislature's 1997 amendment of § 13-107 adding subsection (E). Moreover, the result in *Martin* was not based on § 1-244 or on any broad, generally established, common-law rule that the statute of limitations in effect at the time of an offense

"without force of adjudication," and "not controlling as precedent"). In addition, this court noted in *Jackson*, albeit again in dicta, that "the tolling provision in current § 13-107(E) now controls cases in which serious offenses have been committed by unidentified persons." 208 Ariz. 56, n.14, 90 P.3d at 801 n.14. After oral argument in this court, Aguilar filed supplemental authorities for the propositions that "it is the court's duty to decide the applicable law" and that "[p]arties cannot properly bind the court as to the law governing their case." *State v. Stone*, 151 Ariz. 455, 460, 728 P.2d 674, 679 (App. 1986). Although we certainly agree with those propositions, we disagree with Aguilar's apparent suggestion that the statements in ¶ 8 of *Taylor* are not dicta. And to the extent *Taylor, Escobar-Mendez*, or any other court of appeals' decision supposedly announces a broad common-law rule that a statute of limitations in effect at the time of a criminal offense is necessarily frozen and beyond legislative change as applied to that offense, we also disagree.

21

is the only statute that governs and applies to any prosecution for that offense. Accordingly, for these reasons and those discussed in *Gum*, 214 Ariz. 397, ¶¶ 18-21, 153 P.3d at 423-24, we likewise find *Martin* distinguishable and not controlling here.

**¶40** Citing A.R.S. § 1-249 and *Brunet v. Murphy*, 212 Ariz. 534, 135 P.3d 714 (App. 2006), Aguilar alternatively argues that his "right to the seven year statute of limitation protection accrued when the police discovered the offenses in question in September and October 1993," even if that right was not fully vested at that time. Section 1-249, provides: "No action or proceeding commenced before a repealing act takes effect, and no right accrued[,] is affected by the repealing act, but proceedings therein shall conform to the new act so far as applicable." On its face, however, § 1-249 does not apply here because there is no "repealing act," only the addition of subsection (E) to § 13-107. Moreover, even if the concept of an "accrued right" applies in this context, any right Aguilar might have had to a dismissal of the charges against him on statute-of-limitations grounds did not arise or become enforceable until 2000, three years after § 13-107(E) was enacted. *See Black's Law Dictionary* 22 (8th ed. 2004) (defining "accrue" as "[t]o come into existence as an enforceable claim or right; to arise"). Therefore, even assuming the addition of subsection (E) constituted a "repealing act," Aguilar had no accrued right to exclusion from any post-1993 change in the applicable statute of limitations.

**¶41** Our conclusion is not altered by *Brunet*. The statutory amendments at issue there "eliminated the right under the [prior statute] to sue physicians unless they belonged to one of the limited categories designated by the statute." 212 Ariz. 534, ¶ 5, 135 P.3d at 716. Because the statutory amendments addressed in *Brunet* expressly "eliminate[d] [a]

22

previously existing right," they were deemed "repealing acts." *Id.* ¶¶ 22, 23. Moreover, the court's conclusion in *Brunet* that § 1-249 prevented the new statute from barring the estate's accrued cause of action was based on the long-standing principle that personal injury claims accrue upon actual or constructive discovery of an injury. *See id.* ¶ 21. That principle has no application here and does not support Aguilar's claim that he has an accrued right to a particular statute of limitations, frozen in time as of the offense date.

## 2. Constitutional claim

¶42 Having rejected Aguilar's statutory arguments, we now turn to his constitutional claim. He urges us to affirm the trial court's ruling based on ex post facto principles, contending "retroactive application of amended A.R.S. § 13-107(E) to the circumstances of [this] case would violate" both the federal and the state constitutions. *See* U.S. Const. art. I, § 9, § 10, cl. 1; Ariz. Const. art. II, § 25. The court in *Gum* squarely addressed and rejected an identical argument. 214 Ariz. 397, ¶¶ 14-17, 155 P.3d at 422-23. As the *Gum* court stated, "Extension of the limitations period does not criminalize previously innocent conduct, does not increase the punishment for an existing crime, and as applied to Gum's case, does not deprive him of any defense available according to the law at the time he committed the crimes." *Id.* ¶ 14. Because we agree with that reasoning and with the many courts that have rejected ex post facto arguments in similar cases,[6] we likewise

---

[6]*See Gum*, 214 Ariz. 397, n.7, 155 P.3d at 422 n.7 (citing numerous cases upholding amended statutes of limitation against challenges on ex post facto grounds); *see also Longhibler v. State*, 832 S.W.2d 908, 909 (Mo. 1992) (no ex post facto violation when "the original three-year period had not expired at the time the new ten-year statute of limitations was enacted"); *cf. Stogner v. California*, 539 U.S. 607, 618 (2003) (implicitly approving numerous federal and state cases that "have upheld extensions of *unexpired* statutes of

conclude that "neither the United States Constitution nor the Arizona Constitution is violated by the application of A.R.S. § 13-107(E)" to the state's prosecution here. *Gum*, 214 Ariz. 397, ¶ 17, 155 P.3d at 423.

## C. Recommencement of limitations period

**¶43** The final issue we must address is what "re-triggers" the limitations period to begin running again, or anew, for prosecution of crimes covered by § 13-107(E).[7] Citing *Jackson*, the trial court ruled that the 1997 statutory amendment "causes the running of the Statute to be tolled until the time that the State should reasonably be able to identify the offender." Engrafting a "reasonable due diligence" requirement and probable-cause standard onto § 13-107(E), the court further ruled the limitations period here "was re-triggered on November 27, 2002," the date on which "the exercise of reasonable due diligence would have given rise to probable cause to charge" Aguilar. As of that date, the court noted, the state "had access to all of the following: the crime scene samples, the

---

limitations" to criminal prosecutions, provided "the prior limitations periods have not expired" when new law took effect); *id.* at 634 (Kennedy, J., dissenting) (same and citing additional cases in which "extensions of unexpired statutes of limitations" were upheld against ex post facto challenges).

[7]Having concluded that § 13-107(E) applies to the state's prosecution of Aguilar on the sexual assault and kidnapping charges, and because those charges were not time-barred when subsection (E) took effect, arguably that amendment provided a new, seven-year "period of limitation" that was unaffected by the time between the date the offenses were committed and the amendment's effective date. § 13-107(E). In other words, the limitations period arguably did not start to run until the identity of the person who allegedly had committed the offenses was known. We do not address or decide that issue here, however, because it is unnecessary for us to do so.

CODIS database, and a known sample of [Aguilar's] DNA," "albeit pursuant to a different case."

¶44 In challenging that ruling, the state argues § 13-107(E) imposes "no requirement that the State exercise reasonable diligence in discovering the person's identity." Therefore, the state asserts, "the [limitations] time should not have been re-triggered until the day the State had actual knowledge of [Aguilar's] identity—in March 2006." Based on the plain, unambiguous language of § 13-107(E), we agree.

¶45 For serious offenses such as sexual assault and kidnapping, *see* § 13-604(W)(4)(e) and (j), "[t]he period of limitation does not run . . . during any time when the identity of the person who commits the offense or offenses is unknown." § 13-107(E). When "a statute's language is clear and unambiguous, we must give effect to that language and need not employ other rules of statutory construction." *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997); *see also Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, ¶ 8, 174 P.3d 270, 272 (2008) ("When the language of a statute is clear and unambiguous, a court should not look beyond the language, but rather 'simply "apply it without using other means of construction," assuming that the legislature has said what it means.'"), *quoting Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002), *quoting UNUM Life Ins. Co. v. Craig*, 200 Ariz. 327, ¶ 12, 26 P.3d 510, 513 (2001); *Sepahi*, 206 Ariz. 321, ¶ 16, 78 P.3d at 735; *Taylor*, 214 Ariz. 40, ¶ 10, 148 P.3d at 87 ("the best evidence" of legislature's intent "is the statutory language").

¶46 When construing more than one subsection of a statute, "[w]e presume the legislature did not intend to write a statute that contains a void, meaningless, or futile

25

provision." *State v. Pitts*, 178 Ariz. 405, 407, 874 P.2d 962, 964 (1994); *see also Taylor*, 214 Ariz. 40, ¶ 18, 148 P.3d at 88-89. "[W]e look to the statute as a whole and give harmonious effect to all its sections." *State v. Ball*, 157 Ariz. 382, 384, 758 P.2d 653, 655 (App. 1988).

**¶47** As Aguilar acknowledges, the trial court "based its re-triggering of the statute of limitations" on *Jackson* "by finding the police should have had probable cause to act at the time they obtained [Aguilar's] DNA sample." According to Aguilar, the court's "synthesis of Arizona statutory and case law is not inappropriate." We disagree.

**¶48** In our view, because § 13-107(E) is "clear and unambiguous," it is not reasonably susceptible to the judicial gloss the trial court superimposed on it. *Riggs*, 189 Ariz. at 333, 942 P.2d at 1165; *see also Cundiff*, 217 Ariz. 358, ¶ 8, 174 P.3d at 272. As the state points out, the "discovery" and "reasonable diligence" language found in § 13-107(B) is noticeably absent from § 13-107(E). In other words, as the state correctly argues, § 13-107(E) "does not require constructive knowledge or reasonable diligence, as subsection (B) does—only actual knowledge." If the legislature had intended to qualify subsection (E) by implicitly imposing a reasonable-diligence requirement on the state so that the time-limitations clock would begin to run again as soon as the state should have been able to identify a suspect, the legislature presumably would have said that expressly. It did not. *See State v. Jennings*, 150 Ariz. 90, 93, 722 P.2d 258, 261 (1986) ("If the legislature had intended to have [certain] language," found in one statute but not in related statute, "apply to both [statutes], it could have simply placed it in both sections."). Absent any such

26

qualifying language, we will not deviate from the statute's plain wording by imposing conditions or requirements that the legislature did not see fit to impose.

¶49    We also find misplaced the trial court's reliance on *Jackson* in imposing a reasonable-diligence requirement on § 13-107(E). *Jackson* dealt solely with the meaning and effect of § 13-107(B), which contains express "discovery" and "reasonable diligence" language. Unlike this case, in *Jackson* the identity of the alleged offender was not in issue, and the state conceded that § 13-107(E) did not affect that particular case. 208 Ariz. 56, nn.3,14, 90 P.3d at 796 n.3, 801 n.14. Again, under § 13-107(E), the limitations period begins to run only when the state acquires actual knowledge of the offender's identity, not merely constructive knowledge based on what it could or should have known had it exercised reasonable diligence.[8]

¶50    In addition, engrafting a reasonable-diligence requirement onto § 13-107(E) would directly negate its express provision that the limitations period "does not run . . . during any time that the identity of the person who commits the offense or offenses is unknown," undermining the contrary presumption our case law requires. *See Pitts*, 178 Ariz. at 407, 874 P.2d at 964. On the other hand, by recognizing that the legislature deliberately imposed such a requirement on the discovery of less serious offenses under

---

[8]As Aguilar suggests, this statutory rule arguably undermines the various policy factors on which criminal statutes of limitations are based. *See Taylor*, 214 Ariz. 40, ¶¶ 20-21, 148 P.3d at 89-90; *Jackson*, 208 Ariz. 56, n.5, 90 P.3d at 796 n.5. "But when, as here, the legislature has clearly spoken on a matter within its domain, its word constitutes public policy on that subject and controls, assuming no constitutional impediments exist." *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, ¶ 27, 33 P.3d 518, 525 (App. 2001).

§ 13-107(B) but imposed no such conditions for serious offenses under § 13-107(E), we ascribe meaning to both subsections. *See Pitts*, 178 Ariz. at 407, 874 P.2d at 964.

¶51 In this case, the limitations period began to run when the two incidents occurred on September 9 and October 12, 1993. *See Taylor*, 214 Ariz. 40, ¶ 19, 148 P.3d at 89. Because the limitations period had not yet expired when § 13-107(E) took effect on July 21, 1997, the running of the statute, at a minimum, was tolled until the state actually discovered Aguilar's identity in March and April 2006. *See Gum*, 214 Ariz. 397, ¶¶ 28-29, 153 P.3d at 425-26; 1997 Ariz. Sess. Laws, ch. 135, § 1; *see also* n.7, *supra*. Only then did the seven-year limitations period recommence, or begin to run anew, *see* n.7, *supra*, making the charges filed in October 2006 timely. Accordingly, we reverse the trial court's order dismissing the sexual assault and kidnapping charges against Aguilar.

## Disposition

¶52 For the reasons stated above, we affirm the trial court's dismissal of all counts charging sexual abuse and second-degree burglary. We reverse the dismissal of the sexual assault and kidnapping charges, however, and remand the case for further proceedings consistent with this opinion.

_____
JOHN PELANDER, Chief Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Presiding Judge

_____
J. WILLIAM BRAMMER, JR., Judge